ALBERT CAPALDO *vs.* PUBLIC UTILITY HEARING BOARD.

JULY 25, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This cause is before us again on an appeal, in accordance with public laws 1940, chapter 821, section 1, from a decision of the public utility hearing board denying petitioner's application for a certificate of public necessity and convenience to operate three taxicabs for transportation of passengers within the city of Providence. In our earlier opinion it was remanded to the board for completion and clarification of its decision. *Capaldo* v. *Public Utility Hearing Board,* 70 R. I. 356. Thereafter a supplementary decision was filed and on the motion of the petitioner the matter was reargued.

The evidence presented in support of the application comprised petitioner's own testimony and that of an operator of one of his cars and two patrons thereof, an independent taxicab owner, two policemen, an operator of another public service car, a traffic expert on trucks, and the district manager of the federal office of defense transportation for Providence.

Petitioner was the owner of three public service cars for which he held public or "P" plates, so called, issued by the motor vehicle department. Such cars may be operated from private stands but may not lawfully pick up or solicit passengers indiscriminately on the highways. On the other hand, certificates to operate taxicabs are issued and regulated by the public utility administrator and are legally permitted to have stands, and to pick up and solicit passengers indiscriminately on the public highways.

The gist of the evidence for petitioner, some of which was not corroborated and some of which was refuted, is to the following effect: On several occasions members of the public on highways in the downtown section, during daily peak periods or in other emergencies, have requested transportation or have opened the door of petitioner's car, when it stopped for traffic or otherwise, and have been transported for hire in violation of law. Similar incidents, in the present war emergency, were claimed by petitioner to have been experienced by owners of most of the cars being operated under public plates.

On a few occasions, particularly in emergencies, certain of the witnesses were unable to obtain taxicab service immediately at the time and place as demanded. On one Sunday morning at the Biltmore Hotel petitioner saw a large number of people waiting, as he presumed, for taxicabs and none was then and there visible, and at Union Station on another occasion he noted a similar condition. Between the hours of midnight or 12:30 and 2 to 3 o'clock in the morning at Exchange Place in the downtown section of Providence a considerable number of persons leaving the cafes and restaurants

after they had closed were not able to obtain transportation by taxicabs. The petitioner operated a private stand located on a parking lot on the southerly side of Exchange Place near the location where the last-mentioned demand existed and his cars were kept very busy.

On the other hand, there was testimony presented, in opposition to the granting of petitioner's application, by representatives of the city of Providence, the Yellow Cab Company and Monahan Cab Company, the latter two being owners and operators of taxicabs that were registered under certificates of convenience and necessity previously issued by the administrator.

Such evidence showed, in substance, the following facts: The city objected to the granting of the application for the particular stand described therein. At least half of the people waiting at the Biltmore Hotel and Union Station on the two occasions mentioned by the petitioner were not waiting for taxicabs at all, and the remainder were served and the sidewalks cleared in not over fifteen minutes. There was no long waiting by passengers at either of these places even at peak periods, and no substantial complaints had been made by any of the witnesses or other members of the public to either of the above-mentioned taxicab companies or to the administrator, alleging any unreasonable delay or inadequate taxicab service. On Exchange Place between approximately 12:30 to 2 or 2:30 o'clock in the morning there were not enough taxicabs actually in operation to meet the demand at that particular time and place, but this was due to unusual war emergency conditions and to efforts of the Yellow Cab Company in particular to conform to general order No. 20 of the federal office of defense transportation; and this demand, which was limited as to both time and place, could be satisfied by use of taxicabs already registered, but then inactive, if the administrator would so order. The Yellow Cab Company was ready and willing to do whatever was necessary to put all of their registered and inactive taxicabs in operation, if necessary and so ordered.

The petitioner renews his contentions that the decision of the board is arbitrary and unlawful in that it is based upon matters not in evidence or properly for the board's consideration and also that the evidence in any event clearly required the granting of the application.

The board's original and supplemental decisions, when read together, contain many general and special findings. Such findings are entitled, under the express provisions of the statute, to be considered as *prima facie* true and are not to be reversed unless they are unlawful or unreasonable or against the weight of the evidence. P. L. 1940, chap. 821, section 1. *Breen's Taxi* v. *Division of Public Utilities,* 59 R. I. 134. But conversely such findings based upon matters not in evidence or upon considerations that are not proper under the law for the board's determination are not entitled to such weight.

Some of the board's discussion in the original decision appears to involve considerations of a broad discretion claimed for the administrator and a policy established by him and his predecessors to issue no more certificates to operate taxicabs in Providence merely because 282 certificates had been previously issued to the Yellow Cab Company. We pointed out in our earlier opinion that these discussions and assumptions threw some doubt upon whether or not they formed any material basis for some of the board's original findings. As to any established policy of the administrator, we find no direct evidence thereof in the transcript and such a matter, if otherwise proper for consideration, should have been shown by evidence, because the hearing before the board is *de novo* under the statute. P. L. 1939, chap. 660, sec. 125, as amended by P. L. 1940, chap. 821, section 1.

As to the discretion claimed for the administrator, it may be that the general assembly intended by this statute to give him some discretion in discharging his duties under the law; but in our opinion this statute, at least in its present form, does not give an exclusive franchise to any operator and does not contemplate that the administrator's discretion should

be unlimited. Any policy properly established by the administrator to assist him in discharging his duties under the law must be reasonably related to and be determined by what is conducive to the general public convenience, interest, welfare and protection. See *Capaldo* v. *Public Utility Hearing Board, supra,* and cases cited. A policy otherwise framed does not thereby become the controlling standard by which to determine whether or not general public convenience and necessity require the issuance of additional certificates to operate taxicabs.

The evidence here shows that 282 certificates were issued to the Yellow Cab Company by a predecessor of the administrator about 1930; that at no time thereafter were more than 101 taxicabs ever registered and operated by this company; and that the latter number, together with the taxicabs already registered and operated by other owners, were and are adequate to serve the general public convenience and necessity throughout Providence as a whole in all periods and conditions. Manifestly a policy based solely upon the mere issuance, without need, of such a large number of certificates for taxicabs that were never registered and operated in the public service is not reasonable and cannot be substituted for the standard provided by the law. Public service has been held to be the test in granting a certificate of convenience and necessity. *Mooney* v. *Tuckerman,* 50 R. I. 37; *Breen's Taxi* v. *Division of Public Utilities, supra.*

Hence, if any of the board's findings, as later clarified, can still be said to materially rely upon the existence of an unlimited discretion, as claimed for the administrator, or upon a policy arbitrarily established as above indicated, such findings are not hereby approved.

On the other hand, the original decision, as later clarified by the board, reveals certain other controlling findings that appear to be independent of the above-mentioned considerations and to have support in the evidence. For our purposes the important and material findings are, in substance and effect, that (1) the petitioner had not established the exist-

ence of a general public necessity and convenience requiring the issuance of three new certificates to him; (2) that apart from conditions on Exchange Place the evidence was limited to a comparatively few individuals who were unable to obtain taxicab service immediately at the time and place of their demand; (3) that at Exchange Place the demand for automobile transportation clearly exceeded the number of available taxicabs but only during the hours of approximately 12:30 to 2 or 2:30 o'clock in the morning; and that this demand, in addition to being localized as to time and place, was due to abnormal and temporary war conditions and to the reduction in the number of taxicabs being actually operated at that hour, in order to conform with general order No. 20 of the regulations of the federal office of defense transportation; (4) that such demands could be adequately served by taxicabs that were previously registered and operated by the Yellow Cab Company but which were now inactive only because of a desire to aid the war effort by conforming to regulations of the federal office of defense transportation; and (5) that, if necessary, the Yellow Cab Company was then ready and willing to put all of such registered taxicabs into operation, if ordered and permitted to do so.

An examination of the record shows that there is evidence in support of these findings and we cannot say that such findings and the decision based thereon are arbitrary or unreasonable or that they are against the clear weight of the evidence.

The nub of this case, in our opinion, is whether the board reasonably might consider the fact that the Yellow Cab Company had some thirty or more certified and registered taxicabs, which were rendered inactive because of efforts to conform with general order No. 20 of the regulations of the office of defense transportation, and which were presently available for public service, if ordered into operation by the administrator. We are of the opinion that, in the circumstances appearing in this record, it was competent for the

board to consider such facts. It is well established that the director or the board, in determining whether general public convenience and necessity exist, may consider various factors including the present ability of a utility in the field to provide adequate service to meet any particular demand that may appear. See *Abbott* v *Public Utilities Commission,* 48 R. I. 196.

The evidence here is not disputed that the Yellow Cab. Company had thirty or more taxicabs, already registered and previously operated until rendered inactive by the office of defense transportation regulations, and that it was then ready, willing and able to put them into operation, if ordered and permitted to do so. There is no evidence that the administrator would refuse to order them into operation, or that a special permit could not be obtained for their operation, if necessary, from the office of defense transportation, or that such office would refuse any proper application based upon the conditions as they appear in the evidence. In fact, general order No. 20 of such regulations appears to contemplate just such a possible condition because, in order to save gas and tires during the war emergency, it purports to limit each taxicab registered as of September 1, 1942 to certain maximum mileage, in the absence of a special permit "to meet specific needs or exceptional circumstances, or to prevent undue public hardships". There is also undisputed evidence that the Yellow Cab Company was then ready and willing to put into operation all of its 101 registered taxicabs, if found necessary and ordered to do so by the administrator; and that these, plus the taxicabs already being operated by others, would be entirely ample to serve all particular or localized demands as claimed in the evidence, and also the general demands of the public.

Upon this state of the record and having in mind the weight to be given the board's findings in accordance with the statute, we cannot say that the evidence here requires the conclusion that such findings and decision were clearly arbitrary and unreasonable or were against the weight of the

evidence. In our judgment the evidence, as it appears in this record, shows a need for administrative action by the Yellow Cab Company or the administrator or both to correct, through the operation of taxicabs actually registered and presently available, the alleged inadequacies of service that were found by the board to be limited to a particular time and place. What the result might be if the evidence showed, as it does not, that the Yellow Cab Company, acting alone or on order of the administrator, was unwilling or unable to place in operation all its registered taxicabs, if necessary, to correct such alleged inadequacy of service is not before us on this record and we do not decide.

The appeal of the petitioner is denied and dismissed and the decision of the board, as understood and interpreted by us, is sustained.

CONDON, J., dissenting. I dissent because the board exceeded its jurisdiction. After finding that there was a public need for additional taxicab service at the location where the petitioner desired to establish a taxicab stand, the board denied his petition substantially on the ground of public policy. That was clearly beyond its province. The only question before it was one of fact. And that question was, had the petitioner shown by his evidence that public convenience made it necessary to permit additional taxicab service at the location applied for? If it found that he had shown such need, it was the board's duty to reverse the decision of the administrator and order him to issue the desired certificates. It was no part of its duty to go further, as it did, and weigh questions of public policy, which it conceived might arise if it reversed the administrator.

In my opinion the board clearly found that "public convenience and necessity" had been proved. This is evident from the following language of the board's decision: "We find, and are bound to find, that in and about Exchange Place in the City of Providence between the hours of 12:00 midnight and 2:00 A. M. or thereabouts there are large

numbers of persons desiring transportation by automobile in excess of that which is available. This could not be better illustrated than by the testimony of Tony Brown, an independent operator of taxicabs, who stated that you could not get a taxicab at 1:00 o'clock in the morning if fifty cabs were added to those now in operation. There is, therefore, clearly a demand at that location at those times for additional facilities for automobile hire."

Having made that definite finding on the only issue before it, the board then goes on to discuss other matters which persuaded it to sustain the decision of the administrator. While such matters might afford the legislature reasons for legislative action to meet a situation created by the emergency of war, they do not, in my opinion, afford an administrative agency, such as the board or the administrator, grounds for arrogating such authority to itself. In the instant proceeding the board is solely a fact-finding agency of very limited scope, namely, that of finding whether or not the petitioner has established that public convenience requires additional taxicab service. Its finding of such fact is *prima facie* conclusive upon us, if the weight of the evidence supports such finding, and it is also conclusive upon the board itself.

That the above-quoted finding of the board is supported by the weight of the evidence is put beyond all question by certain parts of the testimony of Charles Keenan, manager of the Yellow Cab Company, which is the holder of almost all the taxicab certificates of public convenience and necessity in the city of Providence and which opposed, before the board and before us, the granting of the instant petition. "32 CQ Now, Mr. Keenan, do you feel that there is a necessity for more taxicabs in the City of Providence at the present time? A. The orders issued by the O. D. T. would make it necessary. Under ordinary conditions before they came out, I would say 'no'. 33 CQ I didn't ask you that, Mr. Keenan. At the present time do you feel that there is necessity for more taxicabs? A. Basing my answer on normal conditions? . . . 35 CQ Mr. Keenan, do you feel that at the

present time there are enough taxicabs in the City of Providence to take care of the demands of the general public? A. Working under O. D. T. restrictions 'no'. . . . 89 CQ Are you able to take care of all of the patrons in the City of Providence? A. Not since the O. D. T. restrictions were placed on us."

The first rule for the guidance of the administrator is to see that the public convenience is served. That is a duty which the statute plainly puts upon him. The same duty rests upon the board in reviewing his decision. The protection of present holders of certificates from the economic effects of additional competition is secondary. The object of the statute is neither to foster monopoly nor to freeze existing competition. Such considerations become relevant only incidentally in determining the primary question whether additional service by another or others will really promote the welfare of the traveling public.

If war regulations of the federal government have restricted the present holders of taxicab certificates to the operation of so limited a number of taxicabs that they are presently unable to furnish adequate public service, as is evidently the case, and, if such regulations permit other automobiles which are operated for public hire to be used in taxicab service, as is also the case, then there is no sound reason why the administrator should not issue certificates of public convenience and necessity for the operation of such automobiles as taxicabs. Indeed, in such circumstances, I think that it is his duty to do so, provided the petitioner is able to meet all the requirements for the rendering of such taxicab service.

While it may seem harsh and unjust to the present holders of such certificates that others should thus be permitted to furnish the very service which they are prepared to furnish but are prevented from furnishing by the war regulations of the federal government, there is actually no injustice, although there may be a real economic sacrifice. But, in that respect, their situation is no worse than that of many who,

by reason of one war regulation or another, have suffered substantial economic loss. And of course such loss is not to be compared with the loss of life or health which hundreds of thousands have already suffered in this war. The present holders of certificates are, therefore, entitled to no special consideration or protection at the cost of inconvenience to the public merely because their business is, in part, an economic casualty of war. Moreover, neither the board nor the administrator is competent to extend such protection. The scope of their power is limited to the consideration solely of "public convenience and necessity."

It may not be amiss to observe here that, according to the evidence, much of the public inconvenience due to lack of adequate taxicab service in Exchange Place in the post-midnight hours is being borne by men of the armed services who come to Providence to enjoy a few all too fleeting hours of freedom from military regimen and, who, in many instances, are squeezing all the enjoyment there is to be obtained out of their last free time before they embark upon the great adventure. Who would think, much less talk of any economic loss in the face of that fact? To suffer those men, presently a substantial part of the traveling public in Providence, to be inconvenienced by not authorizing additional taxicab service would, on this record, most certainly be harsh and unjust to them. But aside from any question of injustice to them or to the present holders of certificates, the need for additional taxicab service to serve public convenience having been shown, the authorization of additional service should follow.

For the reasons above set forth, I am, therefore, of the opinion that the board erred in not granting the petition and reversing the decision of the administrator.

*William Gerstenblatt,* for complainant.

*William C. Waring, Jr., James E. Flannery, Edwards & Angell,* for Yellow Cab Co.

*John H. Nolan,* Attorney General, *A. Norman LaSalle,* Asst. Attorney General, for State.